Mark B. Wilson, P.C. - Bar No. 137400
William P. Keith - Bar No. 270587
KLEIN & WILSON LLP
4770 Von Karman Avenue
Newport Beach, California 92660
(949) 631-3300; Facsimile (949) 631-3703
wilson@kleinandwilson.com; wkeith@kleinandwilson.com

Attorneys for Plaintiff ACI INTERNATIONAL, a California corporation

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/30/2024 5:03 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Ilieva, Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – BEVERLY HILLS COURTHOUSE

| | |
|---|---|
| ACI INTERNATIONAL, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>McCARTER & ENGLISH, LLP, a New Jersey limited liability partnership; LORI J. SHYAVITZ, an individual; DAVID R. BURNS, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 24SMCV04739<br><br>**COMPLAINT FOR: (1) PROFESSIONAL NEGLIGENCE; (2) BREACH OF FIDUCIARY DUTY; (3) UNFAIR BUSINESS PRACTICES (*BUSINESS AND PROFESSIONS CODE* SECTION 17200, ET SEQ.); AND (4) BREACH OF WRITTEN CONTRACT; AND DEMAND FOR JURY TRIAL** |

Plaintiff ACI International, a California corporation ("ACI"), alleges the following against defendants McCarter & English, LLP a New Jersey limited liability partnership ("McCarter"), Lori J. Shyavitz, an individual ("Shyavitz"), David R. Burns, an individual ("Burns"), and Does 1 through 100, inclusive (collectively, "Defendants").

**PARTIES**

1. ACI is a corporation licensed to do business in the State of California with its principal place of business in Los Angeles, California.

2. McCarter is a limited liability partnership licensed to do business in the State of New Jersey with its principal place of business in Newark, New Jersey. McCarter is a large law firm with approximately 12 offices and employs approximately 400 attorneys in offices across the United States.

///

1

**COMPLAINT; DEMAND FOR JURY TRIAL**

983942

3. Shyavitz is an individual who, on information and belief, resides in Boston, Massachusetts. At all times relevant, Shyavitz was a McCarter Partner based out of McCarter's Boston office.

4. Burns is an individual who, on information and belief, resides in Boston, Massachusetts. At all times relevant, Burns was a McCarter Partner based out of McCarter's Boston Office.

5. Does 1 through 100, inclusive, are Defendants whose identities have not yet been ascertained. They are individuals, partnerships, corporations, or some other business entity. On information and belief, each Doe Defendant was somehow responsible for the damages caused in this case. As soon as the true identities and capacities of the Doe Defendants have been ascertained, this complaint will be amended to reflect the true names and capacities of each Doe Defendant.

6. Each Defendant was the agent, alter-ego, employee, principal, partner, joint venturer, employer, or in some other capacity derivatively responsible for each of the acts of the other defendants.

## JURISDICTION AND VENUE

7. The court has jurisdiction over this matter because the amount in controversy exceeds the minimum statutory amount.

8. Defendants are subject to jurisdiction under *Code of Civil Procedure* section 410.10, which states a court may exercise jurisdiction on any basis not inconsistent with the Constitution of the State of California or the Constitution of the United States of America.

9. Defendants conduct business in California and primarily committed the acts or omissions giving rise to these claims during their representation of Plaintiff which is located in Los Angeles, California. Defendants have sufficient minimum contacts with Los Angeles, California such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

10. Venue is proper in the West District of the Los Angeles County Superior Court, California, under *Code of Civil Procedure* section 395(a) because, on information and belief, the conduct at issue took place in the West District of the County of Los Angeles, California, and on information and belief, Plaintiff and Defendants entered into a contract for legal representation in the West District of the County of Los Angeles, California.

///

## GENERAL ALLEGATIONS

11. ACI is a footwear wholesaler in the business of designing and having shoes manufactured and selling them to various retailers.

12. On January 17, 2013, ACI entered into a retainer agreement for Defendants to represent ACI "in connection with intellectual property matters, namely, that certain shoe certification project conducted at the request of Wal-Mart Stores, Inc. ('Wal-Mart')." A copy of the retainer agreement is attached as Exhibit 1 and is incorporated herein by reference (the "Retainer Agreement").

13. The Retainer Agreement contains the following language which addresses conflicts of interest:

> During the course of our representation of ACI International there may be issues where ACI International may have conflicting or potentially conflicting interests to Wal-Mart, which is a client of the Firm. If you disagree on any issue with Wal-Mart, we will ask you to resolve your differences with Wal-Mart, without our assistance. If you cannot resolve your differences, we will not be able to represent you as to that issue or dispute with Wal-Mart. If the differences are serious enough, we may be required by applicable ethics rules to withdraw completely from the representation of you. In addition, if there is a conflict between you and Wal-Mart, you agree that any such conflict shall not be grounds to disqualify us from representing Wal-Mart in any other matters unrelated to this representation of you, now or in the future, even if adverse to you.
>
> Feel free, of course, to consult counsel of your choice with respect to this waiver of any conflicts of interest or any other aspect of this letter.

(Exhibit 1 at p. 2)

> **Conflicts of Interest.** Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients. We have implemented procedures to identify conflicts at the outset of each engagement. It is possible that during our representation of you, some of our present or future clients will have disputes or transactions with you. We are accepting this engagement with your understanding and express consent that our relationship with you will not preclude us from continuing or accepting an engagement from a new or existing client, even if the interests of such clients are directly adverse. However, we will not accept an engagement that is directly adverse to you if either: (1) it would be substantially related to the subject matter of our representation of you, or (2) we have obtained from you proprietary or other confidential information of a nonpublic nature that, if known to our other client, could be used in any such other matter by such client to your material

> disadvantage. You should understand that having similar agreements with other clients helps preserve our ability to continue to represent you.

(Emphasis in original.) (Exhibit 1 at p. 4)

14. On information and belief, Defendants represented ACI, Walmart, Inc. ("Walmart"), and Vans, Inc. ("Vans") during the same time.

15. Pursuant to the Retainer Agreement, McCarter provided intellectual property ("IP") clearance letters for shoe designs that ACI wished to design, manufacture, and sell to Walmart.

16. McCarter provided IP clearance letters, which contained formal noninfringement opinions, for many of ACI's shoe designs including, as relevant here, IP clearance letters and noninfringement opinions for shoe designs against various market trends including Vans branded shoes (the "Relevant Shoes").

17. Once ACI received the IP clearance letters, and the formal noninfringement opinions contained therein, ACI manufactured and sold the Relevant Shoes to Walmart.

18. In or around March 2021, Vans sent a cease-and-desist letter to Walmart demanding that it stop selling the Relevant Shoes on grounds that the Relevant Shoes infringed on Vans' various intellectual property rights (the "Cease-and-Desist Letter").

19. McCarter received a copy of the Cease-and-Desist Letter. Even though McCarter represented ACI when McCarter received the Cease-and-Desist Letter, McCarter did not disclose the letter to ACI. As a result, ACI was deprived the opportunity to comply with the Cease-and-Desist Letter and avoid a lawsuit.

20. On November 15, 2021 (which, on information and belief, is after the date that McCarter received the Cease-and-Desist Letter), Vans and another entity called VF Outdoor, LLC ("VF Outdoor") filed a lawsuit in the Central District of California against Walmart and other defendants, called *Vans, Inc. et al v. Walmart, Inc. et al.*, case no. 8:21 cv 01876 (the "Underlying Action").

21. The complaint in the Underlying Action asserted claims for relief for: (1) trademark infringement; (2) unfair competition and false designation of origin; (3) contributory trademark infringement; (4) state unfair competition; and (5) common law unfair competition.

///

22. On March 31, 2022, the court granted Vans' motion for a preliminary injunction, and issued an injunction.

23. On November 8, 2022, Vans and VF Outdoor filed a first amended complaint in the Underlying Action (the "Underlying FAC"). In it, Vans and VF Outdoor named ACI as a defendant to all but one of the existing claims for relief, and added a new claim for relief against ACI for contributory trademark infringement.

24. In the Underlying FAC, Vans and VF Outdoor added additional allegations regarding ACI, including, *inter alia*, that Walmart contracted and collaborated with ACI to design and have the Relevant Shoes manufactured.

25. ACI did not learn about the Underlying Action until November 18, 2021.

26. On November 6, 2023, ACI, Vans, and VF Outdoor entered into a settlement agreement whereby ACI agreed to the entry of a permanent injunction and agreed to pay Vans three $3 million in exchange for mutual releases between the parties (the "Settlement Agreement").

27. On February 21, 2024, ACI requested that Defendants send ACI its entire client file.

28. As of the date of this filing, Defendants have refused to send ACI its complete client file.

## FIRST CAUSE OF ACTION

## FOR PROFESSIONAL NEGLIGENCE

### (Against All Defendants)

29. ACI incorporates by reference paragraphs 1 through 28 of this complaint as though fully set forth.

30. Defendants represented ACI.

31. Defendants provided ACI IP clearance letters, and formal noninfringement opinions contained therein, for the Relevant Shoes.

32. As ACI's attorneys, Defendants had a duty to provide legal services consistent with the standard of care for attorneys (i.e., the duty to use such skill, prudence, and diligence as members of their profession commonly possess and exercise).

33. In representing ACI, Defendants performed legal services below the standard of care for the legal profession and, therefore, breached their duty of care to Plaintiff.

34. Defendants fell below the standard of care by, among other ways:
    A. Failing to warn ACI about the IP risks engendered by the Relevant Shoe designs in the IP clearance letters and putative noninfringement opinions that Defendants prepared for ACI regarding the Relevant Shoes;
    B. Failing to timely tell ACI about the Cease-and-Desist Letter and send it to ACI;
    C. Favoring Walmart over ACI; and
    D. Failing to produce ACI's entire file to ACI upon demand.

35. ACI would have obtained a better result if Defendants had acted as reasonably careful attorneys. The same harm would not have occurred without Defendants' conduct.

36. If Defendants met the standard of care, then (among other things) ACI would not have manufactured and sold the Relevant Shoes to Walmart, would not have been named as a defendant in the Underlying FAC, and would not have had to enter into the Settlement Agreement.

37. If Defendants had timely notified ACI about the Cease-and-Desist Letter, then (among other things) ACI would have taken steps to stop production of the Relevant Shoes and significantly reduced its damages exposure.

38. As a proximate cause of Defendants' negligence, ACI suffered damages of at least $26 million, together with interest as provided by law.

## SECOND CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

39. ACI incorporates by reference paragraphs 1 through 28, and 30 through 38 of this complaint as though fully set forth.

40. As ACI's attorneys, Defendants owed fiduciary duties to ACI, including, without limitation:

///
///
///
///

    A.    The duty to keep ACI reasonably informed about significant developments relating to the representation pursuant to current CRPC[1], rule 1.4, prior CRPC[2], rule 3-500, and MRPC, rule 1.4;

    B.    The duty to avoid representing other clients with actual or potential conflicts with ACI or where there was a significant risk that Defendants' representation of ACI would be materially limited by Defendants' responsibilities to or relationships with other clients, unless Defendants entered such representation of other clients with ACI's informed written consent, pursuant to current CRPC, rule 1.7, prior CRPC, rule 3-310, and MRPC, rule 1.7;

    C.    The duty of loyalty pursuant to current CRPC, rules 1.1 and 1.7[3], prior CRPC, rules 3-110 and 3-310[4], and MRPC, rules 1.1 and 1.7; and

    D.    The duty to provide ACI with all ACI's client materials and property upon the termination of Defendants' representation of ACI pursuant to current CRPC, rule 1.16, prior CRPC, rule 3-700, and MRPC, rule 1.15(A).

41.    Defendants breached such fiduciary duties to ACI by, among other ways:

    A.    Failing to timely communicate with ACI about the Cease-and-Desist Letter;

    B.    Failing to obtain ACI's informed written consent before simultaneously representing ACI, Walmart, and Vans;

    C.    Favoring other clients over ACI; and

    D.    Failing to provide ACI with ACI's entire client file (*i.e.*, ACI's client materials and property) upon request.

---

[1] The Massachusetts Rules of Professional Conduct ("MRPC") are substantially like the CRPC. So regardless of which rules apply to Defendants' conduct, the consequences of the conduct alleged in this complaint are the same.

[2] Defendants' representation of ACI began on January 17, 2013, so the "1992" California Rules of Professional Conduct (effect from September 14, 1992 to October 31, 2018) applied during a portion of the representation.

[3] *See also*, Comment to current CRPC, rule 1.7 ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client.").

[4] *See also*, Comment to prior CRPC, rule 3-100 ("Similarly, the member should consider his or her duties of loyalty and competency (rule 3-110).").

42. The purported conflict waiver in the Retainer Agreement is materially deficient by, among other ways:

    A. Failing to comply with current CRPC, rule 1.7, prior CRPC, rule 3-310, and MRPC, rule 1.7;

    B. Failing to disclose all material facts Defendants knew and could reveal that would impact ACI's decision to consent to Defendants' concurrent representation of ACI, Walmart, and Vans;

    C. Failing to disclose Defendants' concurrent representation of Vans, notwithstanding that the scope of the Retainer Agreement anticipated the preparation of IP clearance letters, and purported noninfringement opinions contained therein, that covered shoe designs, including the Relevant Shoes, which Defendants knew or should have known raised a substantial likelihood of IP infringement allegations by Vans against ACI; and

    D. Failing to obtain ACI's informed written consent to the representation considering the potential and actual conflicts of interest that McCarter had in accepting the representation.

43. Defendants' breach of their fiduciary duties harmed ACI.

44. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

45. Defendants' conduct constitutes a serious ethical violation.

46. Defendants' breach of their fiduciary duties proximately caused Plaintiff to suffer damages of at least $26 million (which includes disgorgement of fees paid to Defendants), together with interest as provided by law.

### THIRD CAUSE OF ACTION
### FOR UNFAIR BUSINESS PRACTICES – *BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.*
#### (Against All Defendants)

47. ACI incorporates by reference paragraphs 1 through 28, and 30 through 38, and 40 through 46 of this complaint as though fully set forth.

48. Defendants violated the following California and Massachusetts statutes, among others:

   A. Current CRPC, rule 1.4, prior CRPC, rule 3-500, and MRPC, rule 1.4 ([lawyer must keep the client reasonably informed about significant developments relating to the representation] – Defendants violated these rules by failing inform ACI about the Cease-and-Desist Letter);

   B. Current CRPC, rule 1.7, prior CRPC, rule 3-310, and MRPC, rule 1.7 ([lawyer must avoid representing other clients with actual or potential conflicts with existing client or where there is a significant risk that representation of one client would be materially limited by responsibilities to or relationships with other clients, unless the lawyer entered such representation of other clients with the existing client's informed written consent] – Defendants violated these rules by failing to obtain ACI's informed written consent to representation, notwithstanding potential and actual conflicts of interest that Defendants had by virtue of their joint representation of Vans and Walmart);

   C. Current CRPC, rules 1.1 and 1.7, prior CRPC, rules 3-110 and 3-310, and MRPC, rules 1.1 and 1.7 ([lawyer owes the client a duty of loyalty] – Defendants violated these rules by favoring Walmart over ACI); and

   D. Current CRPC, rule 1.16, prior CRPC, rule 3-700, and MRPC, rule 1.15(A) ([lawyer must release all client materials and property to client at the termination of the representation] – Defendants violated this rule by refusing to return to ACI all ACI's client materials and property).

49. Defendants' conduct constitutes an unlawful, unfair, and/or fraudulent business practice under California *Business and Professions Code* section 17200, et seq.

50. ACI seeks restitution of the money Defendants acquired by means of such practices, including damages of at least $24,261 (representing fees paid to Defendants), together with interest as provided by law.

///

///

## FOURTH CAUSE OF ACTION

## FOR BREACH OF WRITTEN CONTRACT

### (Against McCarter and Does 1 through 100)

51. ACI incorporates by reference paragraphs 1 through 28, and 30 through 38, 40 through 46, and 48 through 50 of this complaint as though fully set forth.

52. ACI and Defendants entered into the Retainer Agreement.

53. An implied term of the Retainer Agreement is that Defendants would meet the standard of care, comply with the current and prior CRPC and MRPC, and meet their fiduciary duties to ACI.

54. ACI did all, or substantially all, of the significant things the Retainer Agreement required it to do, except for those obligations for which it was excused or prevented from performing.

55. Defendants breached the Retainer Agreement as set forth in paragraphs 34, 41, 42, and 48, among other ways.

56. As a result of Defendants' breach of the Retainer Agreement, ACI has been damaged in the amount of $26 million, together with interest as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, ACI prays for the following relief against Defendants.

### As to the First, Second and Fourth Causes of Action:

1. Damages according to proof, but not less than $26 million;
2. Prejudgment interest;
3. Costs of suit; and
4. Any and all relief the court may deem just and proper.

///
///
///
///
///
///
///

10

**COMPLAINT; DEMAND FOR JURY TRIAL**

983942

**As to the Third Cause of Action:**

1. Restitution of not less than $24,261.
2. Prejudgment interest;
3. Costs of suit; and
4. Any and all relief the court may deem just and proper.

KLEIN & WILSON LLP

Dated: September 30, 2024

By: /s/ Mark B. Wilson
Mark B. Wilson, P.C.
Attorneys for Plaintiff ACI International

**DEMAND FOR JURY TRIAL**

Plaintiff ACI International demands a jury trial in this case.

KLEIN & WILSON LLP

Dated: September 30, 2024

By: /s/ Mark B. Wilson
Mark B. Wilson, P.C.
Attorneys for Plaintiff ACI International

**EXHIBIT 1**



## McCARTER & ENGLISH
### ATTORNEYS AT LAW

January 14, 2013

VIA E-MAIL (ALIAU@ACIINT.COM)

Anna M. Liau
Vice-President and General Counsel
ACI International
844 Moraga Drive
Los Angeles, CA 90049

**David R. Burns**
Partner
T. 617.449.6564
F. 617.607.9075
dburns@mccarter.com

Re:   Representation of ACI International

Dear Anna:

We thank you for asking the firm to represent ACI International. This letter and the enclosed Terms of Engagement will describe the basis on which our firm will provide legal services to ACI International. In particular, we have been engaged to represent ACI International in connection with intellectual property matters, namely, that certain shoe certification project conducted at the request of Wal-Mart Stores, Inc. ("Wal-Mart")

McCarter & English, LLP
265 Franklin Street
Boston, MA 02110-3113
T. 617.449.6500
F. 617.607.9200
www.mccarter.com

I will be the lawyer at the firm with the primary responsibility for this representation. As indicated in the Terms of Engagement, our fees are based upon our hourly rates. My current hourly rate is $460.00. The hourly rates of the associate attorneys and paralegals assisting me range from $180.00 to $435.00. As previously estimated, a shoe clearance ranges in cost between $1,200 and $2,500 USD depending on the complexity of the shoe and the cost may increase based on the number of design iteration reviews and/or name reviews.

BOSTON

HARTFORD

NEW YORK

We will not require the payment of an advance retainer in light of your relationship with Wal-Mart, but reserve the right to request one in the future. You will be notified of any retainer required. By signing and returning our engagement letter you agree that any retainer we receive may be deposited in our regular business account rather than in a trust account. We will generally apply the retainer to our last statement and refund any unused portion to you, without interest, after our work has been concluded.

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

As you know, McCarter & English regularly represents Wal-Mart in a variety of matters. Our representation of you in this matter gives rise to a conflict of interest as your interests are at least technically adverse to those of Wal-Mart. Accordingly, we request that you waive any such conflict of interest with our representation of Wal-Mart arising by reason of this engagement for you, and your signature on this letter will signify your consent. You also agree that our representation of you in connection with this engagement will not be a conflict of interest as to our representation of Wal-Mart in any other matter, now or in the future, unrelated to this

ME1 14732313v.1

**EXHIBIT 1**

Anna M. Liau
January 14, 2013
Page 2

**McCARTER & ENGLISH**
ATTORNEYS AT LAW

~~representation of you, even if adverse to you, and, to the extent it might be a conflict, you agree to waive any such conflict.~~

During the course of our representation of ACI International there may be issues where ACI International may have conflicting or potentially conflicting interests to Wal-Mart, which is a client of the Firm. If you disagree on any issue with Wal-Mart, we will ask you to resolve your differences with Wal-Mart, without our assistance. If you cannot resolve your differences, we will not be able to represent you as to that issue or dispute with Wal-Mart. If the differences are serious enough, we may be required by applicable ethics rules to withdraw completely from the representation of you. In addition, if there is a conflict between you and Wal-Mart, you agree that any such conflict shall not be grounds to disqualify us from representing Wal-Mart in any other matters, now or in the future, even if adverse to you. *unrelated to this representation of you,*

Feel free, of course, to consult counsel of your choice with respect to this waiver of any conflicts of interest or any other aspect of this letter.

Please review the Terms of Engagement carefully. Let me know if you have any questions about it. If all the terms are satisfactory, please indicate ACI International's consent by signing the enclosed copy below and returning it to me with the retainer in the enclosed reply envelope.

We look forward to working with you on this matter.

Sincerely,

*David Burns*

David R. Burns

The provisions of this letter and the Terms of Engagement are agreed to:

ACI International
By: *Anna M. Liau*
Title: *Vice President + General Counsel*
Dated: *1-17-2013*

ME1 14732313v.1

**EXHIBIT 1**



**McCARTER & ENGLISH**
ATTORNEYS AT LAW

## TERMS OF ENGAGEMENT

The information below describes the terms that apply to the legal services provided for you by McCarter & English, LLP. We encourage you to discuss any of these terms with us at any time. If modifications to the terms are needed, you must discuss that with us so that agreement on changes can be reached and reduced to writing. All references to "you" or "your" means the client or clients identified in our engagement letter. Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.

**Scope of Work**. The scope of the work we will do for you is limited to the description stated in our engagement letter. Any changes or additions to the scope of our work must be agreed to and memorialized by letter or email. Unless that description states otherwise, our engagement does not include responsibility for (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted, (2) notification of your insurance carriers about the matter, (3) advice to you about your disclosure obligations concerning the matter under the federal securities laws or any other applicable law, or (4) advice to you about tax issues that relate to the matter. If we agree to represent you in additional matters, we will do so in writing by letter or email, and the terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

**Staffing**. One lawyer will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

**Financial Arrangements**

**(1) Fees and expenses.** Our fees are based upon the hourly rates of our lawyers and other personnel in effect when the services are performed. These rates change periodically, generally on an annual basis, based upon economic factors and the experience level and expertise of our personnel. Expenses include items such as filing fees, travel costs, overnight or other special mail services, messenger services, photocopies, outgoing faxes, research service charges (e.g. LEXIS), secretarial and other staff overtime charges (when required to meet the needs of the matter), and other special services such as document imaging. Certain of these charges are adjusted to include administrative and overhead expenses incurred by the firm to provide the billed service. Some large disbursements may be forwarded to you for direct payment. Some charges may not be in the system at the time of monthly billing and will appear on a later bill.

**(2) Retainers.** The provisions relating to any retainer required are set forth in the engagement letter.

**(3) Billing and Payment.** We generally forward our statements monthly. The statements will include a brief description of each item of work performed, the date performed, the time required to do the work and the expenses incurred. Please let us know if you need additional information on the bills and we will try to accommodate your request. Payment is due promptly upon receipt of our statement. We reserve the right to terminate our representation of clients who do not pay

ME1 14732313v.1

**EXHIBIT 1**



**McCARTER & ENGLISH**
ATTORNEYS AT LAW

promptly. We do not and cannot guarantee the outcome of any matter, and payment of our fees and disbursements is not conditioned on any particular outcome. You agree that if we bring an action to collect amounts due us that we will be entitled to recover the costs and fees incurred by us. You consent to venue and jurisdiction where we have an office with attorneys who worked on your behalf. If we are required to testify, produce documents, or respond to other requests in connection with proceedings commenced by third parties that relate to our representation of you, you will pay us our reasonable fees and costs incurred.

**Conflicts of Interest**. Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients. We have implemented procedures to identify conflicts at the outset of each engagement. It is possible that during our representation of you, some of our present or future clients will have disputes or transactions with you. We are accepting this engagement with your understanding and express consent that our relationship with you will not preclude us from continuing or accepting an engagement from a new or existing client, even if the interests of such clients are directly adverse. However, we will not accept an engagement that is directly adverse to you if either: (1) it would be substantially related to the subject matter of our representation of you, or (2) we have obtained from you proprietary or other confidential information of a nonpublic nature that, if known to our other client, could be used in any such other matter by such client to your material disadvantage. You should understand that having similar agreements with other clients helps preserve our ability to continue to represent you.

**Emails**. We encourage the use of email as an efficient means of communication. However, emails can be delayed or blocked (for example, by anti-spam software). You must not assume that an email message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message. In addition, you should be aware that there are risks in sending or receiving emails and other electronic communications using a computer or other device, or e-mail account, where there is a significant risk that a third party may gain access to the communication. Accordingly, you should avoid using a workplace computer or system for a personal client-lawyer communication, or a borrowed computer or a public computer, such as in a hotel or library, for any client-lawyer communication with us, particularly any sensitive or substantive client-lawyer communication.

**Conclusion of Representation**. Our representation of you will terminate when we send you our final statement for services rendered in this matter. We may also terminate our representation for any reason consistent with ethical rules, including conflicts of interest or your failure to pay our fees and expenses. Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. Once our representation is concluded, we will not be obligated to take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter. At your request, your papers and property will be returned to you promptly upon receipt of payment for outstanding fees and costs. Our own files pertaining to the matter will be retained by the firm. These firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers. All such documents retained by the firm will be transferred to the person responsible

2

ME1 14732313v.1

**EXHIBIT 1**